UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>    Plaintiff,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>    Defendant. | No. 6:20-cv-00783<br><br>JURY TRIAL DEMANDED |

BRAZOS'S COMPLAINT AGAINST HPE FOR
INFRINGEMENT OF U.S. PATENT NO. 9,398,629

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos"), by and through its attorneys, files this Complaint for Patent Infringement against defendant Hewlett Packard Enterprise Company ("HPE") and alleges:

NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, including §§ 271, 281, 284, and 285.

THE PARTIES

2. Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 606 Austin Avenue, Suite 6, Waco, Texas 76701.

3. On information and belief, HPE is a corporation organized and existing under the laws of Delaware, with a regular and established place of business located at 14231 Tandem Boulevard, Austin, Texas 78728. HPE may be served through its designated agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has specific and general personal jurisdiction over HPE pursuant to due process and/or the Texas Long Arm Statute because HPE has committed and continues to commit acts of patent infringement, including acts giving rise to this action, within the State of Texas and within this Judicial District. The Court's exercise of jurisdiction over HPE would not offend traditional notions of fair play and substantial justice because HPE has established minimum contacts with the forum. For example, on information and belief, HPE has committed acts of infringement in this Judicial District, directly and/or through intermediaries, by, among other things, making, using, offering to sell, selling, and/or importing products and/or services that infringe the Asserted Patent, as alleged herein.

6. Upon information and belief, HPE has continuous and systematic business contacts with the State of Texas. HPE is registered to do business in the State of Texas, has offices and facilities in the State of Texas, and actively directs its activities to customers located in the State of Texas. HPE, directly and/or through affiliates and/or intermediaries, conducts its business extensively throughout Texas, by shipping, importing, manufacturing, distributing, offering for sale, selling, and/or advertising its products and services in the State of Texas and this Judicial District.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b). HPE is registered to do business in Texas and, upon information and belief, HPE has offices in this Judicial District, has transacted business in this Judicial District, and has committed acts of direct and indirect infringement in this Judicial District by, among other things, importing, offering to sell,

and selling products that infringe the Asserted Patent. HPE has regular and established places of business in this Judicial District, as set forth below.

8.      HPE maintains a regular and established place of business in this Judicial District, at least at 14231 Tandem Boulevard, Austin, Texas 78728:[1,2]



9.      Upon information and belief, HPE conducts business and serves customers from its regular and established place of business in Austin, Texas, in this District. Upon information and belief, HPE's Austin office is located on a 52-acre campus.[3]

10.     In October 2019, it was reported that HPE signed a lease for a 27,326-square-foot-space in a 164,714-square-foot office building in North Austin at Paloma Ridge, located at 13620 FM 620 Austin, Texas, 78717.[4]

---

[1] *See* https://www.hpe.com/us/en/contact-hpe.html.

[2] *See* https://goo.gl/maps/mojArn1WxaHcHU8v8; *see also* https://goo.gl/maps/cBjm1De4gVPFMeam9.

[3] *See* https://www2.colliers.com/en/properties/austin-continuum/USA-14231-tandem-boulevard-austin-tx-78728/usa1046778.

[4] *See* https://communityimpact.com/local-news/austin/leander-cedar-park/coming-soon/2019/10/23/hewlett-packard-signs-lease-at-paloma-ridge-on-fm-620/.

11. Upon information and belief, HPE owns at least two properties in Austin, Texas, in this Judicial District.[5]

12. HPE maintains regular and established places of business in the State of Texas, nearby to this District, including at 11445 Compaq Center West Drive Houston, Texas, 77070; and 6080 Tennyson Parkway, Suite 400, Plano, Texas 75024.[6]

13. HPE website states that HPE is as "a global edge-to-cloud Platform-as-a-Service company . . . that helps customers connect, protect, analyze, and act on all [of the customers'] data and applications wherever they live . . . ."[7] Upon information and belief, HPE designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States products that infringe the Asserted Patent, directly and or through intermediaries, as alleged herein. HPE markets, sells, and/or offers to sell its products and/or services, including those accused herein of infringement, to actual and potential customers and end-users located in Texas and in this Judicial District, as alleged herein.

14. HPE organizes its business into "four segments," as described in its Form 10-K for the fiscal year ended October 31, 2019. One of these "segments" is the "Intelligent Edge" segment, which "provides a portfolio of secure Edge-to-Cloud solutions . . . that include wireless local area network ('LAN'), campus and data center switching, software-defined wide area networking, security, and associated services to enable secure connectivity for business of any size." HPE's "Intelligent Edge" "segment" "operat[es] under the Aruba brand." HPE reports

---

[5] *See* http://propaccess.traviscad.org/clientdb/SearchResults.aspx (printout attached as Exhibit B).

[6] *See supra* note 1.

[7] *See* https://www.hpe.com/us/en/about.html.

revenues from the "HPE Aruba Product" and "HPE Aruba Service" business units within the Intelligent Edge segment of its business on its Form 10-K.[8]

15. HPE advertises and sells HPE Aruba Products and HPE Aruba Services to customers, *inter alia*, as part of its Networking portfolio, which is comprised of "AI-powered networking solutions for the Intelligent Edge."[9] HPE also promotes and sells HPE Aruba Products and HPE Aruba Services to customers as part of its "HPE OEM integrated solution" or "HPE OEM Solutions" portfolio."[10]

16. HPE's website permits users to configure and customize HPE products, including HPE Aruba Products and HPE Aruba Services, and request price quotes from HPE on the configured products.[11] HPE's website also permits users to purchase HPE products, including HPE Aruba Products, directly from HPE's website.[12]

17. Upon information and belief, HPE offers trainings and/or certifications to its employees including, *inter alia*, trainings and certifications regarding the sales and/or service of HPE products, including HPE Aruba Products and HPE Aruba Services. For example, HPE offers an HPE Sales Certification to HPE employees, including HPE sales team members, that teaches how to "describe, position and recommend" HPE Aruba Products and HPE Aruba Services to customers.[13]

---

[8] *See* https://investors.hpe.com/~/media/Files/H/HP-Enterprise-IR/documents/hpe-10k2019.pdf.

[9] *See* https://www.hpe.com/us/en/networking.html.

[10] *See* https://www.hpe.com/us/en/oem.html.

[11] *See, e.g.*, https://h22174.www2.hpe.com/SimplifiedConfig/Welcome (printout attached as Exhibit C).

[12] *See, e.g.*, https://buy.hpe.com/us/en/networking/switches/fixed-port-l3-managed-ethernet-switches/6000-switch-products/aruba-6400-switch-series/p/1012138126.

[13] *See* https://certification-learning.hpe.com/tr/datacard/Certification/Aruba-SCE-APAS.

18. As of August 2020, HPE advertised at least fifteen public job postings for positions at HPE's Austin, Texas office.[14] At least one such posting advertised an opening in HPE's Austin office for a Driver Software Engineer, whose responsibilities include, *inter alia*, the ability to "[d]esign, develop, and integrate driver software features and capabilities for HPE's networking product line,"[15] which includes HPE Aruba Products and HPE Aruba Services.[16]

## COUNT I
**(Infringement of U.S. Patent No. 9,398,629)**

19. Brazos re-alleges and incorporates by reference the preceding paragraphs 1–18 of this Complaint.

20. On July 19, 2016, the U.S. Patent & Trademark Office duly and legally issued U.S. Patent No. 9,398,629 (the "'629 Patent"), entitled "System and Method for a Distributed Wireless Network." A true and correct copy of the '629 Patent is attached as Exhibit A to this Complaint.

21. Brazos is the owner of all rights, title, and interest in and to the '629 Patent, including the right to assert all causes of action arising under the '629 Patent and the right to any remedies for the infringement of the '629 Patent.

22. HPE makes, uses, sells, offers for sale, imports, and/or distributes in the United States, including within this Judicial District, HPE Aruba Controllers, including but not limited to Aruba 7000[17] and 7200[18] Series Mobility Controllers (collectively, the "Accused Products").[19]

---

[14] *See* https://www.linkedin.com/jobs/search?keywords=Hewlett%20Packard%20Enterprise&location=Austin%2C%20Texas%2C%20United%20States (printout attached as Exhibit D).

[15] *See* https://www.linkedin.com/jobs/view/driver-software-engineer-at-hewlett-packard-enterprise-1901505190/.

[16] *See supra* note 9.

[17] *See* https://www.arubanetworks.com/products/networking/gateways-and-controllers/7000-series/; https://www.arubanetworks.com/assets/ds/DS_7000Series.pdf.

6

23. The Accused Products include "HPE Aruba Products" and/or "HPE Aruba Services" as described in HPE's Form 10-K for the fiscal year ended October 31, 2019.[20]

24. The Accused Products are wireless local area network (WLAN) controllers in a mobility domain.

25. The Accused Products are "high-performance appliances for the enterprise" and "provide optimized layer 3 roaming, scalability and redundancy for campus networks of any size."[21]

26. "A mobility domain is a group of Aruba controllers among which a wireless user can roam without losing their IP address."[22]

27. The Accused Products can participate in a mobility domain and can share the list of mobility domains configured on a master controller.[23]

> You configure mobility domains on master controllers. All local controllers managed by the master controller share the list of mobility domains configured on the master. Mobility is disabled by default and must be explicitly enabled on all controllers that will support client mobility. Disabling mobility does not delete any mobility-related configuration.
>
> In ArubaOS versions before 6.3, the home agent table (HAT) maps a user VLAN IP subnet to potential home agent addresses. Starting from 6.3, when mobility is enabled the controller to which the client connects for the first time becomes its home agent. The

---

[18] *See* https://www.arubanetworks.com/products/networking/gateways-and-controllers/7200-series/; https://www.arubanetworks.com/assets/ds/DS_7200Series.pdf.

[19] *See* https://www.arubanetworks.com/products/networking/gateways-and-controllers/; *see also supra* note 9; *supra* note 10; https://h22174.www2.hpe.com/SimplifiedConfig/Welcome (printouts attached as Exhibit E).

[20] *See supra* note 8.

[21] *See* https://www.arubanetworks.com/products/networking/gateways-and-controllers/.

[22] *See* https://www.arubanetworks.com/techdocs/ArubaOS_61/ArubaOS_61_UG/Mobility.php.

[23] *See* https://www.arubanetworks.com/techdocs/ArubaOS%206_3_1_Web_Help/Content/ArubaFrameStyles/Mobility/Configuring_Mobility_Dom.htm.

> mobility feature uses the HAT table to locate a potential home agent for each mobile client, and then uses this information to perform home agent discovery. To configure a mobility domain, you must assign a home agent address to at least one controller with direct access to the user VLAN IP subnet. (Some network topologies may require multiple home agents.)
>
> Aruba recommends you configure the switch IP address to match the AP's local controller *or* define the Virtual Router Redundancy Protocol (VRRP) IP address to match the VRRP IP used for controller redundancy. Do not configure both a switch IP address and a VRRP IP address as a home agent address, or multiple home agent discoveries may be sent to the controller.

28. The Accused Products comprise at least one memory and a processing module.

29. The Accused Products use a central processor and SDRAM/flash memory to support over 32,000 wireless devices.[24]

30. The processing modules of the Accused Products are operable to determine an address of at least one seed WLAN controller in the mobility domain.

31. The Accused Products enable the WLAN controller to determine a layer-3 IP address of the master controller during the setup of the mobility domain.

32. The figure (hereinafter Figure A) illustrates an example configuration of "a network in a campus with three buildings."[25]

---

[24] *See* https://csrc.nist.gov/csrc/media/projects/cryptographic-module-validation-program/documents/security-policies/140sp2457.pdf at 6, 20.

[25] *See supra* note 23.



Figure A

In this example configuration, each building has a WLAN controller. All three WLAN controllers are in a single mobility domain. Each of buildings has a different Layer-3 address (*i.e.*, IP address). The WLAN controller of Building 1 (controller A) serves as a Master controller (*i.e.*, seed controller) for the controllers of Building 2 and Building 3.

33.   A WLAN controller receives an IP address of the seed controller during registration in a mobility domain. The IP address and identifier of the master (*i.e.*, seed) controller are used to configure the default mobility domain, as shown in the following example configuration process run on the master controller (*e.g.*, controller A of Figure A):[26]

```
(host)(config) #router mobile
(host)(config) #ip mobile domain default
(host)(mobility-domain) #hat 10.1.1.245
description "Corporate mobile entry"
(host)(mobility-domain) #hat 10.2.1.245
description "Local entry"
(host)(mobility-domain) #hat 10.3.1.245
description "Reserved reentry"
(host)(mobility-domain) #hat 10.4.1.245
description "Sales team"
(host)(mobility-domain) #!
```

---

[26] *See supra* note 23.

```
(host)(config)# ip mobile active-domain
default
```

34. The following example configuration process run on other controllers (*e.g.*, controller A and controller B of Figure A) in order to register in the mobility domain identify the default domain (registered with the IP address of master controller):[27]

```
(host)(config) #router mobile
(host)(config)# ip mobile active-domain
default
```

35. The processing modules of the Accused Products are operable to register with the at least one seed WLAN controller in the mobility domain.

36. The Accused Products enable configuring the role of a WLAN controller within the mobility domain using the following steps:[28]

> **Using the Initial Setup**
>
> Initial setup can be done using the browser-based Setup Wizard or by accessing the initial setup dialog via a serial port connection. Both methods are described in the ArubaOS Quick Start Guide and are referred throughout this section as "initial setup."
>
> The initial setup allows you to configure the IP address of the controller and its role, in addition to other operating parameters. You perform the initial setup the first time you connect to and log into the controller or whenever the controller is reset to its factory default configuration (after executing a **write erase**, **reload** sequence).
>
> When prompted to enter the controller role in the initial setup, select or enter local to set the controller operational mode to be a local controller. You are then prompted for the master controller IP address. Enter the IP address of the master controller for the WLAN network. Enter the preshared key (PSK) that is used to authenticate communications between controllers.
>
> > You need to enter the same PSK on the master controller and on the local controllers that are managed by the master.

---

[27] *See supra* note 23.

[28] *See* https://www.arubanetworks.com/techdocs/ArubaOS_63_Web_Help/Content/ArubaFrameStyles/Adding_Local_Switches/Configuring_Local_.htm.

**Using the Web UI**

For a controller that is up and operating with layer-3 connectivity, configure the following to set the controller as local:

1. Navigate to the Configuration > Network > Controller > System Settings page.
2. Set the Controller Role to Local.
3. Enter the IP address of the master controller. If master redundancy is enabled on the master, this address should be the VRRP address for the VLAN instance corresponding to the IP address of the controller.
4. Enter the PSK that is used to authenticate communications between controllers.

You need to enter the same PSK on the master controller and on the local controllers that are managed by the master.

**Using the CLI**

For a controller that is up and operating with layer-3 connectivity, configure the following to set the controller as local: `masterip <ipaddr> ipsec <key>`

37. The registering with the at least one seed WLAN controller in the mobility domain that the processing modules of the Accused Products are operable to perform is by transmitting a register request including a layer 3 address of the WLAN controller to the at least one seed WLAN controller with a mobility domain identifier of the mobility domain and receiving a register acknowledgement from the at least one seed WLAN controller when the mobility domain identifier matches a mobility domain identifier of the at least one seed WLAN controller.

38. The Accused Products enable configuring the role of a controller on a WLAN controller as a local controller by registering it with the master (*i.e.*, seed) controller.[29,30]

---

[29] *See supra* ¶ 36.

[30] https://support.arubanetworks.com/Documentation/tabid/77/DMXModule/512/Command/Core_Download/Default.aspx?EntryId=39097 at 17, 26.

39. The Accused Products enables the master (*i.e.*, one seed WLAN controller) and local controllers to synchronize the configuration information with each other after the successful registration. The synchronization of the information is possible after a successful joining (*i.e.*, acknowledgment for successful joining of the mobility group):[31]

> **Configuring Layer-2/Layer-3 Settings**
>
> Configure the LANS, subets, and IP addresses on the local controller for IP connectivity.
>
> Verify connectivity to the master controller by pining the master controller from the local controller.
>
> Ensure that the master controller recognizes the new controller as its local controller. The local controller should be listed with type **local** in the **Monitoring > Network > All WLAN Controllers** page on the master. It takes about 4 – 5 minutes for the master and local controllers to synchronize configurations.

40. The Accused Products enable adding configurations corresponding to a managed device or a node in the master controller (*i.e.*, the mobility master). Initially, the managed device (*i.e.*, local controller) uses the master IP address to contact the master controller and retrieves its configuration from the master controller.

41. The Accused Products provide a Zero Touch Provisioning feature for configuring managed devices. Zero Touch Provisioning provides various provisioning modes for managed devices, including auto, mini-setup, and full-setup. Once the managed device determines the master controller's IP address, the managed device contacts the master controller and retrieves its configuration from a configuration node on the master controller. In doing so, the managed devices send a request packet for retrieving the configuration information. The request packet

---

[31] *See supra* note 28.

contains source IP address as the managed device's IP address and destination IP address as master controller's IP address:[32]

> **Managed Device Provisioning Modes**
>
> The administrator has the choice of provisioning modes that select how the managed device is supplied with its own IP address, role, country code, and configuration settings.
>
> Once the managed device learns the IP address of the primary Mobility Master, the managed device contacts that Mobility Master and retrieves its configuration from its assigned configuration node.
>
> Before you deploy a managed device, use you must create a configuration for that device at a configuration node on Mobility Master. Mobility Master pushes this configuration to the managed device when the Aruba device becomes active on the network.
>
> ArubaOS supports the following provisioning modes for managed devices:
>
> - **auto:** In this mode, the managed device:
>   - obtains its IP address from DHCP
>   - obtains its role, country code, and the IP address of the Mobility Master and any defined secondary Mobility Master from a provisioning rule in Activate
>   - retrieves its configuration from a configuration node on Mobility Master
> - **mini-setup:** In this mode, the managed device
>   - has its role set to local (local) when mini-setup is initiated
>   - obtains its IP address from DHCP
>   - is configured through the console with its country code and the IP address of the primary Mobility Master and (optionally) the secondary Mobility Master IP
>   - retrieves its local configuration group from the primary Mobility Master
> - **full-setup:** In this mode the managed device:
>   - is configured with its role set to local (local) through the console

---

[32] *See supra* note 30 at 210–11.

- is configured to obtain its IP address through manual configuration of a static IP, DHCP, or PPPoE
- is configured through the console with its country code and the IP address of the primary Mobility Master and (optionally) the secondary Mobility Master IP
- retrieves its configuration from a configuration node on the primary Mobility Master

42. The processing modules of the Accused Products are operable to receive information for other WLAN controllers in the mobility domain from the at least one seed WLAN controller.

43. The Accused Products enable the mobility domain to configure the local controllers in the domain to receive the mobility domain information from the master controller (*i.e.*, receiving information for other WLAN controller's other WLAN controllers from at least one seed controller). "You configure a mobility domain on a master controller; the mobility domain information is pushed to all local controllers that are managed by the same master controller. On each controller, you must specify the active domain (the domain to which the controller belongs). If you do not specify the active domain, the controller will be assigned to a predefined 'default' domain."[33]

44. In view of preceding paragraphs 24–43, each and every element of at least claim 1 of the '629 Patent is practiced by the Accused Products.

45. HPE continues to directly infringe at least one claim of the '629 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this Judicial District, without the authority of Brazos. HPE's infringing use of the Accused Products includes its internal use and testing of the Accused Products.

---

[33] *See supra* note 23.

46. HPE has received notice and actual or constructive knowledge of the '629 Patent since at least the date of service of this Complaint.

47. Since at least the date of service of this Complaint, through its actions, HPE has actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the '629 Patent throughout the United States, including within this Judicial District, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- https://support.hpe.com/hpesc/public/km/search#q=mobility;
- https://support.hpe.com/hpesc/public/docDisplay?docId=c05272677;
- https://support.hpe.com/hpesc/public/docDisplay?docId=c05272689;
- https://www.arubanetworks.com/products/networking/gateways-and-controllers/;
- https://www.arubanetworks.com/techdocs/ArubaOS_61/ArubaOS_61_UG/Mobility.php; and
- https://www.arubanetworks.com/techdocs/ArubaOS_63_Web_Help/Content/ArubaFrameStyles/Adding_Local_Switches/Configuring_Local_.htm.

HPE was and is aware that the normal and customary use by end users of the Accused Products infringes the '629 Patent. HPE's inducement is ongoing.

48. Since at least the date of service of this Complaint, through its actions, HPE has contributed to the infringement of the '629 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this Judicial District, with knowledge that the Accused Products infringe the '629 Patent. The Accused Products have special features that are especially made or adapted for infringing the '629 Patent and have no

substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least claim 1 of the '629 Patent.

49. The special features include mobility domains that group Aruba controllers among which a wireless user can roam without losing their IP address, which is used in a manner that infringes the '629 Patent.

50. The special features constitute a material part of the invention of one or more claims of the '629 Patent and are not staples articles of commerce suitable for substantial non-infringing use.

51. Brazos has suffered damages as a result of HPE's direct and indirect infringement of the '629 Patent in an amount adequate to compensate for HPE's infringement, but in no event less than a reasonable royalty for the use made of the invention by HPE, together with interest and costs as fixed by the Court.

## JURY DEMAND

Brazos hereby demands a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Brazos respectfully requests that the Court:

(a) enter judgment that HPE infringes one or more claims of the '629 Patent literally and/or under the doctrine of equivalents;

(b) enter judgment that HPE has induced infringement and continues to induce infringement of one or more claims of the '629 Patent;

(c) enter judgment that HPE has contributed to and continues to contribute to the infringement of one or more claims of the '629 Patent;

(d) award Brazos damages, to be paid by HPE in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the

infringement by HPE of the '629 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

 (e) declare this case exceptional pursuant to 35 U.S.C. § 285; and

 (f) award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: August 26, 2020 | */s/ Raymond W. Mort, III* |
|  | Raymond W. Mort, III |
| Edward J. Naughton | Texas State Bar No. 00791308 |
| (*pro hac vice* to be filed) | raymort@austinlaw.com |
| enaughton@brownrudnick.com | The Mort Law Firm, PLLC |
| Rebecca MacDowell Lecaroz | 100 Congress Avenue, Suite 2000 |
| (*pro hac vice* to be filed) | Austin, Texas 78701 |
| rlecaroz@brownrudnick.com | Tel/Fax:   512-865-7950 |
| BROWN RUDNICK LLP |  |
| One Financial Center |  |
| Boston, Massachusetts 02111 |  |
| telephone:  (617) 856-8200 |  |
| facsimile:  (617) 856-8201 |  |
|  |  |
| Alessandra C. Messing |  |
| (*pro hac vice* to be filed) |  |
| amessing@brownrudnick.com |  |
| Timothy J. Rousseau |  |
| (*pro hac vice* to be filed) |  |
| trousseau@brownrudnick.com |  |
| Yarelyn Mena |  |
| (*pro hac vice* to be filed) |  |
| ymena@brownrudnick.com |  |
| BROWN RUDNICK LLP |  |
| 7 Times Square |  |
| New York, New York 10036 |  |
| telephone:  (212) 209-4800 |  |
| facsimile:  (212) 209-4801 |  |
|  |  |
| Sarah G. Hartman |  |
| (*pro hac vice* to be filed) |  |
| shartman@brownrudnick.com |  |
| BROWN RUDNICK LLP |  |
| 2211 Michelson Drive, 7th Floor |  |
| Irvine, California 92612 |  |
| telephone:  (949) 752-7100 |  |
| facsimile:  (949) 252-1514 |  |
|  |  |
|  | *Counsel for Plaintiff* |
|  | *WSOU Investments, LLC d/b/a* |
|  | *Brazos Licensing and Development* |